FILED 08 NOV 21 11:23 USDC-LAE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CONCERNED CITIZENS AROUND MURPHY, | ) ) ) | |
| *Plaintiff,* | ) ) ) | Case No.: **08-4986** Section: Judge: |
| v. | ) ) ) | Division: Magistrate: **SECT. R MAG 2** |
| MURPHY OIL USA, INC., | ) ) | |
| *Defendant.* | ) ) ) | |

---

**COMPLAINT**

---

INTRODUCTION

1. This is a citizen enforcement suit about violations of air pollution emission limits designed to protect human health and the environment. Plaintiff brings this action to enforce the federal Clean Air Act, 42 U.S.C. §§ 7401-7671q, and the Louisiana Environmental Quality Act, La. Rev. Stat. §§ 30:2001-2588 ("the Acts"). Plaintiff is a citizen group with members who live near the oil refinery owned and operated by Defendant Murphy Oil USA, Inc. in Meraux, St. Bernard Parish, Louisiana.

2. Defendant's Meraux refinery is located in a residential area where community members are still recovering from Hurricane Katrina and from an oil spill of more than one million gallons from Defendant's refinery.

Fee 350
Process
X Dktd
CtRmDep
Doc. No

1

3.  Over the past five years, Defendant's Meraux refinery has emitted more than 800,000 pounds of pollutants over and above the amounts that the law allows. These pollutants include dangerous chemicals and gases, such as sulfur dioxide, volatile organic compounds, hydrogen sulfide, and nitrogen oxides.

4.  Defendant's violations threaten public health and the environment and, upon information and belief, will continue until enjoined by this Court.

## JURISDICTION, VENUE AND NOTICE

5.  This Court has original subject matter jurisdiction over this case under 28 U.S.C. § 1331 (federal question jurisdiction), the Clean Air Act, 42 U.S.C. § 7604(a), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

6.  Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the state law claims in this case (which arise under the citizen enforcement provision of the Louisiana Environmental Quality Act, La. Rev. Stat. § 30:2026) because those claims "are so related to claims in the action within [this Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

7.  Plaintiff's supplemental state-law citizen enforcement claims cover the same violations as Plaintiff's federal citizen enforcement claims; thus the state and federal claims arise from a "common nucleus of operative fact." See United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966).

8.  Venue lies in this District pursuant to the Clean Air Act, 42 U.S.C. § 7604(c)(1), because Defendant's Meraux refinery is a stationary source located within this District.

9.  Plaintiff gave notice of the violations alleged in this Complaint in a letter sent by certified U.S. mail on July 1, 2008 ("Notice Letter"), more than 60 days prior to commencement

2

of this lawsuit, to Defendant, EPA, and the State of Louisiana. Plaintiff has attached a copy of the Notice Letter to this Complaint as Exhibit A, which Plaintiff incorporates by reference.

10. The Notice Letter satisfies the requirements of 42 U.S.C. § 7604(b) and La. Rev. Stat. § 30:2026(B).

11. Neither EPA nor the State of Louisiana is diligently prosecuting a civil or criminal action in court to redress Murphy's violations.

12. Murphy's Meraux refinery continues to violate the Acts. Upon information and belief, Murphy's violations will continue until enjoined by this Court.

## PARTIES

13. Plaintiff, Concerned Citizens Around Murphy, is a non-profit corporation organized under the laws of the State of Louisiana and a "person" within the meaning of 42 U.S.C. § 7602(e). Plaintiff's purpose is to protect the health, safety, environment, and quality of life of Meraux and the surrounding communities in St. Bernard Parish. Since Hurricane Katrina and the Murphy oil spill, Plaintiff has been working to promote community revitalization, by encouraging citizen participation and by providing information and advocacy for all residents who are committed to return, rebuild, and remain in Meraux and surrounding areas.

14. Plaintiff sues on behalf of its individual members who are injured by Defendant's excess emissions of sulfur dioxide, volatile organic compounds, hydrogen sulfide, nitrogen oxides, and other air pollutants emitted in violation of the Acts. These violations pose risks to public health and the environment in areas where Plaintiff's members live, work, and recreate. Plaintiff has individual members who breathe and who are otherwise exposed to more harmful air pollutants because of Defendant's excess air emissions that violate the Acts. Plaintiff's members have suffered, are suffering, and will continue to suffer injury from Defendant's

violations. These injuries are actual and concrete and the relief sought in this action would redress them.

15. Defendant, a wholly owned subsidiary of Murphy Oil Corporation, is a Delaware corporation that is engaged in refining, marketing, and transportation of petroleum products in the United States. At all times relevant to this citizen suit, Defendant was and currently is the owner and operator of the Meraux refinery, which is the facility that is the subject of the claims for relief in this Complaint.

## STATUTORY AND REGULATORY BACKGROUND

### Federal Regulation

16. In 1970, Congress amended the Clean Air Act, directing EPA to establish National Ambient Air Quality Standards to protect the public health and welfare from the adverse effects of air pollution. 42 U.S.C. § 7409. EPA has since established such standards for six pollutants, including sulfur dioxide, nitrogen oxides, particulate matter, carbon monoxide, and ozone. 40 C.F.R. pt. 50.

17. Defendant's air emission permits implement Clean Air Act provisions, including the National Ambient Air Quality Standards.

### State Implementation

18. The Clean Air Act provides for state implementation of minimum federal requirements through EPA-approved plans, known as State Implementation Plans. Such plans must include "enforceable emission limitations and other control measures, means, or techniques . . . as well as schedules and timetables for compliance." 42 U.S.C. § 7410(a)(2)(A). Once EPA approves a state's plan, its provisions become binding as a matter of federal law. 42 U.S.C. § 7413(a); see also La. Envtl. Action Network v. EPA, 382 F.3d 575, 579 (5th Cir. 2004).

4

19. EPA has approved Louisiana's State Implementation Plan. See 40 C.F.R. § 52.970.

20. Louisiana's State Implementation Plan applies to owners and operators of any major source of air contaminants in Louisiana as defined by section 501 of the Louisiana air regulations. La. Admin. Code tit. 33, § III.501. Provisions of Louisiana's plan require major sources to obtain air permits that will meet the requirements of Louisiana's Part 70 operating permits program. La. Admin. Code tit. 33, § III.507.A.1.

21. Murphy Oil's Meraux refinery is a major source.

22. Louisiana's State Implementation Plan mandates that "the [Part 70] source be operated in compliance with all terms and conditions of the permit. Noncompliance with any term or condition of the permit shall constitute a violation of the Clean Air Act and shall be grounds for enforcement action . . . ." La. Admin. Code tit. 33, § III.507.B.2.

23. Louisiana's State Implementation Plan also provides: "When [air pollution control] facilities have been installed on a property, they shall be used and diligently maintained in proper working order whenever any emissions are being made which can be controlled by the facilities, even though the ambient air quality standards in affected areas are not exceeded." La. Admin. Code tit. 33, § III.905.A.

24. Air pollution control facilities are any device or contrivance, operating procedure or abatement scheme used to prevent or reduce particulate matter, dust, fumes, gas, mist, smoke, or vapor, or any combination thereof produced by process other than natural. La. Admin. Code tit. 33, § III.111.

Citizen Suit Provisions

25. The Clean Air Act authorizes citizens to sue for injunctive relief and civil penalties of up to $32,500 per violation per day, payable to the U.S. Treasury, for the violation of any "emission standard or limitation" under the Act. 42 U.S.C. § 7604(a); see also 40 C.F.R. § 19.4. Emission standards or limitations include, *inter alia,* permits issued pursuant to the Louisiana State Implementation Plan and Title V of the Clean Air Act. 42 U.S.C. § 7604(f). The Clean Air Act also authorizes federal district courts to enforce emission standards or limitations and to impose appropriate penalties and order beneficial mitigation projects. 42 U.S.C. § 7604(a), (g).

26. The Louisiana Environmental Quality Act also authorizes citizen enforcement. La. Rev. Stat. § 30:2026.

Defendant's Air Permits

27. The Louisiana Department of Environmental Quality (LDEQ) issued Permits numbered 2500-00001-V1, 2500-00001-V2, and 2500-0000V3 (the "Permits") to Defendant.

28. Defendant has a legal duty to do "whatever is necessary" to comply with the Permits. See, e.g., 45 Fed. Reg. 59,874, 59,877 (Sept. 11, 1980) ("The burden is clearly on the source to do whatever is necessary to assure compliance.")

29. The Permits require Defendant to "comply with all [of their] conditions" and further state that "[a]ny permit noncompliance constitutes a violation of the Clean Air Act and is grounds for enforcement action." See Permits, 40 C.F.R. pt. 70 General Conditions, C.

30. The Permits also subject Defendant "to all applicable provisions of the Louisiana Air Quality Regulations." Further, "[v]iolations of the terms and conditions of [each] permit

constitute a violation of these regulations." See Permits, La. Air Emissions, General Conditions, II.

31. The Permits contain numerical emission limits for various pollutants. For Permit #2500-00001-V1, "Emission Inventory Questionnaire sheets establish the emission limitations and are part of the permit." Permit #2500-00001-V1, La. Air Emissions, General Condition III. Compliance with numerical emission limits established in these charts is mandatory. For Permits #2500-0001-V2 and #2500-00001-V3, the charts titled "[t]he Emission Rates for Criteria Pollutant [and] Emission Rates for TAP/HAP ... establish the emission limitations and are part of the permit." See Permits #2500-00001-V2 and #2500-00001-V3, La. Air Emissions, General Condition III. Compliance with numerical emission limits established in these charts is mandatory.

32. Any release of air pollutants into the atmosphere in excess of an hourly or annual emission limit contained in the Permits, or in excess of any other air emission standard or limitation that applies to Defendant, is a violation of the Permits and a violation of the Clean Air Act.

33. Hourly emission limits, expressed in pounds per hour, can be an average hourly rate limit, a maximum hourly rate limit, or both. The Permits express annual emission limits in tons per year, calculated on a rolling 12-month basis.

34. The Louisiana State Implementation Plan requires Defendant to report "[t]he unauthorized discharge of any air pollutant into the atmosphere." La. Admin. Code tit. 33, § III.927.

35. "Unauthorized discharge" is defined to include "a continuous, intermittent, or one-time discharge, whether intentional or unintentional, anticipated or unanticipated, from any

permitted or unpermitted source which is in contravention of any provision of the Louisiana Environmental Quality Act (R.S. 30:2001 et seq.) or of any permit or license terms and conditions, or of any applicable regulation, compliance schedule, variance, or exception of the administrative authority. . . ." La. Admin. Code tit. 33, § I.3905.

36. Notification regulations require that written notification reports of unauthorized discharges include the following: "[D]etails of the circumstances (unauthorized discharge description and root cause) and events leading to any unauthorized discharge . . . and if the release point is subject to a permit: a. the current permitted limit for the pollutant(s) released; b. the permitted release point/outfall ID; and c. which limits were exceeded (SO2 limit, mass emission limit, opacity limit, etc.) for air releases." La. Admin. Code tit. 33, § I.3925.B.4.

37. Defendant repeatedly and frequently provides reports to LDEQ of unauthorized discharges of air pollutants in amounts that exceed hourly and annual emission limits set in Defendant's Permits. After Plaintiff sent its Notice Letter on July 1, 2008, Defendant continues to report unauthorized discharges of air pollutants in excess of emission limits set in its Permits. Upon information and belief, Defendant has not made changes to the operation or design of its Meraux refinery sufficient to prevent unauthorized discharges of air pollutants in excess of emission limits set in Defendant's Permits.

Violations

38. The chart attached to this Complaint as Exhibit B, which is incorporated by reference, lists examples of Defendant's discharges of air pollutants that exceed emission limits set in Defendant's Permits. The information contained in this chart is from reports that Defendant submitted to LDEQ in accordance with Louisiana State Implementation Plan provision La. Admin. Code tit. 33, § III.927.

39. Since October 2003, Defendant has emitted more than 800,000 pounds of pollutants in excess of the limits in its Permits.

40. On at least 15 occasions, Defendant has emitted more than half of its yearly permitted total for a pollutant in a single permit violation.

41. On more than 120 occasions in the past five years Defendant has emitted pollutants at a rate that exceeds the hourly emission limits set in its Permits.

42. Defendant has exceeded its hourly emission limits in its Permits at rates hundreds, thousands, and even millions times greater than the permit limits.

43. In one breach, Defendant discharged volatile organic compounds at a rate 48 million times greater than the hourly limit set in its permit.

44. Defendant has exceeded annual emission limits set in its Permits. On at least five occasions, Defendant has exceeded its annual emission limits during a single emission event.

## Risks to Public Health and the Environment

45. Exposure to air pollution poses risks to public health. Air pollution can attack various systems within the body including the pulmonary, vascular, cardiac, and neurological systems. Problems associated with air pollution can be acute or chronic. Acute health problems include headaches, eye irritation, and nausea. Chronic illnesses associated with air pollution include lung cancer, respiratory disease, and brain and nerve damage.

46. Sulfur dioxide, volatile organic compounds, hydrogen sulfide, nitrogen oxides, and particulate matter can cause serious health and environmental problems.

47. Sulfur dioxide reacts with other chemicals in the air to form sulfate particles. When inhaled, these particles can gather in the lungs and are associated with difficulty in breathing, and premature death. Children, people who are active outdoors, and people with

asthma are particularly susceptible. Sulfur dioxide also accelerates the decay of building materials and paints. Natural processes can transport sulfur dioxide gas and sulfate particles over long distances.

48. Volatile organic compounds and nitrous oxides help form ground-level ozone. Ozone is a primary component of smog. Ozone can aggravate asthma and damage people's lungs. Natural processes can transport ozone and its precursors over long distances

49. Volatile organic compounds are a class of pollutants that include benzene, vinyl chloride, chloroform, toluene, and styrene. Health risks associated with this class of chemicals include eye, nose, and throat irritation, headaches, loss of coordination, liver damage, kidney damage, and central nervous system damage. Some volatile organic compounds cause cancer in humans.

50. Defendant does not list in its unauthorized discharge reports precisely which volatile organic compounds it releases.

51. Hydrogen sulfide is a flammable colorless gas with a powerful odor of rotten eggs that people can detect at low concentrations. Exposure to hydrogen sulfide in the air, even in low concentrations, can irritate the eyes, nose, throat, and respiratory system.

52. Defendant's emissions contribute to the poor air quality near its plant and elsewhere in St. Bernard and the surrounding parishes.

53. Exposure to Defendant's emissions impairs the ability of Plaintiff's members to enjoy life in their community.

54. Odors from the Defendant's excessive emissions annoy Plaintiff's members. The odors are particularly strong when the refinery is flaring.

55. Plaintiff's members are concerned about potential health impacts from breathing Defendant's emissions.

56. Plaintiff's members sometimes forgo activities in which they would otherwise engage in order to avoid annoyance and health risks from Defendant's emissions.

### Need For Court Action

57. Upon information and belief, without the issuance of injunctive relief and the assessment of civil penalties, Defendant will continue to discharge illegal, excess emissions of harmful pollutants and further injure Plaintiff's members and the environment.

58. Injunctive relief is particularly important because Defendant's violations cause Plaintiff's members irreparable harm for which there is no adequate remedy of law.

### FIRST CAUSE OF ACTION
### (Violation of Emission Limits and Clean Air Act)

59. Plaintiff re-alleges and incorporates paragraphs 1 through 57 by reference.

60. Defendant must comply with emission limitations in its Permits and regulations issued pursuant to the Louisiana State Implementation Plan.

61. Defendant's Permits contain federally enforceable emission limits.

62. Emissions from Defendant's Meraux refinery of sulfur dioxide, volatile organic compounds, nitrogen oxides, hydrogen sulfide, and other pollutants, have repeatedly exceeded, and continue to exceed, the hourly and annual emission limits set in Defendant's Permits.

63. Each release by Defendant of a pollutant in violation of an emission limit contained in its Permits is a separate violation of the Clean Air Act.

64. As provided by sections 113(e) and 304(a) of the Act, 42 U.S.C. §§ 7413(e) and 7604(a), the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, and 40

C.F.R. § 19.4, the violations described above subject Defendant to injunctive relief and civil penalties of up to $32,500 per day for each violation of the Clean Air Act.

## SECOND CAUSE OF ACTION
### (Failure to Maintain Pollution Control Devices in Violation of Clean Air Act)

65. Plaintiff re-alleges and incorporates paragraphs 1 through 57 by reference.

66. Upon information and belief, Defendant discharges pollutants in violation of its permits in part because of Defendant's failure to diligently maintain pollution control devices installed at its facility, as required by the Louisiana State Implementation Plan. La. Admin. Code tit. 33, § III.905.A.

67. Defendant's #2 and #3 sulfur recovery units and tail gas treaters, among others, are pollution control devices. These, and other, pollution control devices exhibit a pattern of breakdowns and malfunctions. Upon information and belief, these breakdowns and malfunctions result from Defendant's continuing failure to diligently maintain these pollution control devices.

68. Defendant's failure to diligently maintain pollution control devices violates the Louisiana State Implementation Plan provision La. Admin. Code tit. 33, § III.905.A. Violations of the Louisiana State Implementation Plan are violations of the Clean Air Act.

69. As provided by sections 113(e) and 304(a) of the Act, 42 U.S.C. §§ 7413(e) and 7604(a), the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, and 40 C.F.R. § 19.4, the violations described above subject Defendant to injunctive relief and civil penalties of up to $32,500 per day for each violation of the Clean Air Act.

### THIRD CAUSE OF ACTION
### (Violation of Emission Limits and the Louisiana Environmental Quality Act)

70. Plaintiff re-alleges and incorporates paragraphs 1 through 57 and paragraphs 60 through 62 by reference.

71. Defendant's violations of emission limits, described in Plaintiff's First Cause of Action, above, are violations of the Louisiana Environmental Quality Act.

### FOURTH CAUSE OF ACTION
### (Failure to Maintain Pollution Control Devices in Violation of the Louisiana Environmental Quality Act)

72. Plaintiff re-alleges and incorporates paragraphs 1 through 57 and paragraphs 66 through 68 by reference.

73. Defendant's failure to maintain pollution control devices, described in Plaintiff's Second Cause of Action, above, are violations of the Louisiana Environmental Quality Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this court:

A. Declare that Defendant has been, and continues to be, in violation of the Clean Air Act and the Louisiana Environmental Quality Act.

B. Permanently enjoin Defendant from operating the Meraux Refinery, except within applicable permit limits and in accordance with the Clean Air Act and the Louisiana Environmental Quality Act;

C. Assess civil penalties of $32,500 for each day of each of Defendant's violations;

D. Apply $100,000 of the civil penalties toward beneficial mitigation projects within the community, as provided by 42 U.S.C. § 7604(g)(2);

E. Order Defendant to pay reasonable litigation costs including attorney's fees, expert witness fees, and costs as provided by 42 U.S.C. § 7604(d) and La. Rev. Stat. § 30:2026.A.3;

F. Grant other relief such as this court deems proper.

Respectfully submitted on November 21, 2008,

_____
Andrew Seidel, Student Attorney

_____
Adam Babich, Director, SBN: 27177
Corinne Van Dalen, Supervising Attorney, SBN 21175
TULANE ENVIRONMENTAL LAW CLINIC
6329 Freret Street
New Orleans, Louisiana 70118
Telephone: (504)865-5789 // Fax: (504)862-8721
*Counsel for Plaintiff Concerned Citizens Around Murphy and Supervising Attorneys for Andrew Seidel*